**SHAN MEI ZHANG, Petitioner**

v.

**ATTORNEY GENERAL OF the UNITED STATES, Respondent.**

No. 08–1772.

United States Court of Appeals, Third Circuit.

Submitted Pursuant to Third Circuit LAR 34.1(a) Nov. 18, 2009.

Opinion filed: Jan. 6, 2010.

H. Raymond Fasano, Esq., Madeo & Fasano, New York, NY, for Petitioner.

Kevin J. Conway, Esq., Richard M. Evans, Esq., Thomas W. Hussey, Esq., Michael B. Mukasey, United States Department of Justice Office of Immigration Litigation, Washington, DC, for Respondent.

---

Before: BARRY, STAPLETON and NYGAARD, Circuit Judges.

## OPINION

PER CURIAM.

Shan Mei Zhang petitions for review of an order of the Board of Immigration Appeals ("BIA") affirming the Immigration Judge's ("IJ") decision to deny her applications for relief from removal. We will deny the petition for review.

Zhang, a native and citizen of China, entered the United States in 2002. Shortly after her arrival, the Immigration and Naturalization Service issued a Notice to Appear charging that Zhang was subject to removal because she was present in the United States without having been admitted or paroled. Through counsel, Zhang conceded that she was removable as charged. She applied for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT").

Zhang testified that she left China because she was persecuted on account of her practice of Yi Gan Dao, a religion banned by the Chinese government. Zhang explained that she worked at a government-owned factory. In September 1999, a factory leader required Zhang to report to his office almost every day for a week. The leader wanted Zhang to admit that she practiced Yi Gan Dao. Zhang testified that she was dragged or carried to the office and that she was questioned for two hours each time. Zhang did not admit that she practiced Yi Gan Dao, and, as a result, her wages were withheld for two months. Zhang also stated that she was given only menial tasks at work and that she was laid off in December 1999.

Zhang further testified that, after she lost her job, public security officials, local police officers, or people from the neighborhood went to her home almost every day. She was threatened that she would be arrested if she was not at home. Zhang also stated that she had to report to a neighborhood committee office almost every day until she left the area in December 2001. Zhang stated that her husband's wages were also withheld. Zhang sold her house in November 2000 and lived with her parents. She paid a snakehead to help her leave China. Zhang lived in Canada for four months before arriving in the United States in April 2002. She fears that she will be arrested if she returns to China because she sought asylum abroad.

The IJ found Zhang not credible. The IJ explained that there were material discrepancies between Zhang's written asylum application and testimony that were fatal to her reliability as a witness. The IJ stated that Zhang had omitted from her asylum application the facts to which she testified, including that she was required to report to a factory leader to admit her Yi Gan Dao practice, that the leader threatened to dock her pay, that she was carried or dragged to these meetings, that a public security officer went to her home almost every day for two years, that she had to report to the neighborhood committee office for two years, and that her husband's pay was docked. The IJ noted that Zhang only stated in her written application that she was fired because she was a member of Yi Gan Dao, that she had to stay at home after she lost her job, and that it was difficult for her to find a job. The IJ stated that none of the events that she testified about were inferred in her application.

The IJ also found that Zhang presented inconsistent accounts of why she went to Canada. Although her application suggested that she chose to go to Canada and thereafter found it difficult to live there, her testimony suggested that she intended to stay there briefly before reuniting with

her husband in the United States. The IJ also noted that Zhang omitted from her asylum application testimony that she was approached in Canada and warned not to apply for asylum. In addition, the IJ stated that Zhang did not present her husband, who was reasonably available, as a corroborating witness. Based on the adverse credibility finding, the IJ concluded that Zhang failed to meet her burden of proof to show that she suffered past persecution in China or has a well-founded fear of persecution should she return to China. The IJ also decided that Zhang had not been tortured in China and that she did not show that it was more likely than not that she would be tortured if removed.

The BIA affirmed the IJ's denial of asylum, withholding of removal, and CAT relief. The BIA found no clear error in the IJ's conclusions that Zhang's testimony contained some inconsistencies, that her asylum application contained material omissions, and that Zhang failed to provide sufficient corroborating evidence. The BIA rejected Zhang's arguments that her omissions were minor and that her proceedings were conducted in an unfair manner. This petition for review followed.

Zhang does not challenge the adverse credibility determination in her case or the denial of asylum and withholding of removal. Rather, she argues in her brief that the BIA and the IJ applied the wrong legal standard to her CAT claim. Zhang contends that the legal standard applied in the administrative proceedings is contrary to our decision in *Silva–Rengifo v. Attorney General*, 473 F.3d 58 (3d Cir.2007). We disagree. In *Silva–Rengifo*, we recognized that an applicant for CAT relief bears the burden of showing that it is more likely than not that he or she would be tortured if removed to the proposed country of removal. *Id.* at 64. We noted that an applicant must show a likelihood of

being subjected to torturous acts inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity. *Id.* The meaning of "acquiescence" was at issue in *Silva–Rengifo,* and we held that acquiescence requires only that government officials remain willfully blind to torturous conduct and breach their legal responsibility to prevent it. *Id.* at 70.

Zhang appears to contend that the BIA and IJ required that she show that the government had actual knowledge of torturous conduct, the standard we rejected in *Silva–Rengifo.* However, whether the Chinese government acquiesced to torture was not an issue in this case. In rejecting Zhang's CAT claim, the IJ stated that none of the treatment Zhang had described rose to the level of torture, and that Zhang did not establish that it was more likely than not that she would be tortured by the Chinese government or someone acting on behalf of the government if removed. The IJ did not find it reasonable to believe that Zhang would be treated worse than she had been treated in the past because of her Yi Gan Dao membership. The IJ also found no evidence supporting Zhang's claim that she would be arrested and jailed because she had applied for asylum. The BIA agreed with the IJ's finding that Zhang's experiences in China did not amount to torture by the government or on its behalf.

There was no need for the IJ and BIA to address whether government officials acquiesced or would acquiesce to torturous acts in this case because Zhang's claim was that she was persecuted by a government worker, public security officials, and local police. Zhang has not explained how the evidence supports a claim that officials acquiesced or would acquiesce to torturous conduct. Zhang also does not argue that substantial evidence does not support the

IJ's conclusions that her prior treatment did not rise to the level of torture and that she did not show that it was more likely than not that she would be tortured if removed.

Accordingly, we will deny the petition for review.